UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GLAXOSMITHKLINE CONSUMER HEALTHCARE, L.P. and SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, <br><br> Plaintiffs, <br><br> vs. <br><br> ICL PERFORMANCE PRODUCTS, LP and BAY VALLEY FOODS, LLC, <br><br> Defendants. | Case No. 4:07CV2039 HEA |

# OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant ICL Performance Products, LP's, (ICL), Motion to Dismiss Count III of Plaintiffs' Amended Petition. Plaintiffs oppose the motion. For the reasons set forth below, the Motion is granted.

## Introduction

Plaintiffs filed an Amended Petition in the Circuit Court of City of St. Louis, Missouri against Defendant ICL alleging breach of the implied warranty of merchantability, (Count I), breach of the implied warranty of fitness for a particular purpose, (Count II), and negligence, (Count III).[1] Defendants removed this action on

---

[1] Counts IV through VII are brought against Defendant Bay Valley Foods, LLC.

the basis of federal question jurisdiction, 28 U.S.C. § 1331. ICL now moves to dismiss Count III pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**Facts and Background**[2]

The parties do not dispute the factual allegations set forth in Plaintiffs' Amended Petition: Plaintiffs sell an over the counter fiber laxative called Citrucel, which contains an orange flavoring mix or base. Plaintiffs purchase the orange flavoring base from Defendant Bay Valley. Bay Valley obtains one of the raw materials used in the manufacture of that orange flavoring base, dicalcium phosphate, from ICL's manufacturing facility. This orange flavoring base is shipped to JB Laboratories, (JBL), to be mixed with active ingredients from Dow Chemicals, (Dow), and is then packaged and distributed to Plaintiffs' customers.

During a routine screening of the Citrucel products, JBL discovered a copper filament in the product, and an investigation revealed that the copper filament came from the dicalcium phosphate manufactured by ICL. On July 22, 2005, an elevator bucket at ICL's Carondelet, Missouri manufacturing facility struck an in-process probe causing copper filament to be distributed into the dicalcium phosphate product used by Plaintiffs in the manufacturing of orange flavored Citrucel.

---

[2] This recitation of facts is set forth for the purposes of this Motion only, and in no way relieves any party of the necessary proof of any fact stated herein.

With respect to Count III, Plaintiffs claim that ICL manufactured dicalcium phosphate which was purchased by Bay Valley for inclusion in Citrucel and knew that its products would be consumed by humans, and knew of the use that Bay Valley and Plaintiffs would make of its product. Plaintiffs claim that ICL had a duty to Plaintiffs to produce dicalcium phosphate that was free of contamination, and had a duty to inform Plaintiffs that its dicalcium phosphate had been contaminated.. Plaintiffs allege that ICL breached its duty and was thereby negligent when it failed to use reasonable care by manufacturing batches of dicalcium phosphate containing copper filament.

## **Motion to Dismiss Standard**

The purpose of a motion to dismiss is to test the sufficiency of the complaint. The Supreme Court has recently determined that *Conley v. Gibson's*, 355 U.S. 41, 45-46 (1957), "no set of facts" language "has earned its retirement." *Bell Atlantic Corp. v. Twombly,* __ U.S.__, __, 127 S.Ct. 1955, 1969 (2007). Noting the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief,'" the Court held that a viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic,* 127 S.Ct. at 1964-65, 1974. In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965. The Court explained that this new standard "simply

calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Id.* On the other hand, the Court noted that "of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). "[P]rior rulings and considered views of leading commentators" can assist in assessing the plausibility of the plaintiffs' allegations. *Id.* at 1966. This standard of review has recently been utilized by the Eighth Circuit Court of Appeals. The Court accepts "as true all factual allegations in the complaint, giving no effect to conclusory allegations of law. The plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right." *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007). (Citations omitted).

When considering a motion to dismiss, courts are still required to accept the complaint's factual allegations as true. *Twombly*, 127 S.Ct. at 1965. All reasonable inferences from the complaint must be drawn in favor of the nonmoving party. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004). "In considering a motion to dismiss, courts accept the plaintiff's factual allegations

as true, but reject conclusory allegations of law and unwarranted inferences." *Silver v. H & R Block, Inc.,* 105 F.3d 394, 397 (8th Cir. 1997).

**Discussion**

ICL moves to dismiss Count III as barred by the economic loss doctrine. The economic loss doctrine prohibits a cause of action in tort where the loss is purely economic. *Rockport Pharmacy, Inc. v. Digital Simplistics, Inc*., 53 F.3d 195, 198 (8th Cir.1995) (discussing Missouri law). The Missouri Supreme Court explains that recovery in tort is limited to cases in which there has been "personal injury, or property damage either to property other than the property sold, or to the property sold when it was rendered useless by some violent occurrence." *Crowder v. Vandendeale*, 564 S.W.2d 879, 881 (Mo.1978). "[R]ecovery in tort is limited to cases in which there has been 'personal injury, or property damage either to property other than the property sold, or to the property sold when it [i]s rendered useless by some violent occurrence[.]' " *R.W. Murray Co. v. Shatterproof Glass Corp.*, 697 F.2d 818, 828-29 (8th Cir.1983); see also, e.g., *Crowder*, 564 S.W.2d at 881-82; *Clevenger & Wright Co. v. A.O. Smith Harvestore Products, Inc.*, 625 S.W.2d 906, 909 (Mo.App.1981).

ICL contends that Plaintiffs' damages are purely economic, *i.e.*, losses related solely to the product. In response, Plaintiffs valiantly attempt to circumvent the

application of the doctrine.  Plaintiffs argue, relying on *Groppel v. United States Gypsum Co.*, 616 S.W.2d 49 (Mo.App. E.D. 1981), that the economic loss doctrine does not apply in this instance because Plaintiffs were a remote purchaser of the contaminated product.  *Groppel*, as ICL correctly argues has been essentially disregarded by subsequent courts considering the economic loss doctrine.  As the Eight Circuit Court of Appeals stated in *Shatterproof Glass*,

> [w]e recognize that the Missouri Court of Appeals decision in *Groppel Co. v. United States Gypsum, supra*, appears to support appellants' cause of action in negligence seeking recovery for economic loss rising from the failing of a manufacturer to supply a merchantable product, However, we believe that *Crowder, Clevenger & Wright, Gibson* and *Forrest,* provide "other persuasive data that the highest court of the state would decide otherwise."  Accordingly, we affirm the decision of the district court dismissing appellants' negligence claims on the grounds that appellants have failed to state a cause of action.

*Shatterproof Glass*, 697 F.2d at 829. (citation omitted).  The fact that Plaintiffs were remote purchasers does not eliminate the application of the economic loss doctrine.

Plaintiffs further attempt to avoid the doctrine by arguing that they suffered damages to property other than the property sold.  Plaintiffs contend that the dicalcium phosphate is the property sold, whereas their damages are to the flavoring mix and finished Citrucel products.  Under the applicable law, however, damages to a final product as a result of defective component parts do not constitute "damages to other property."  See  *Rockport Pharmacy*,  53 F.3d at 198; *Shatterproof Glass*, 697

F.2d at 829 n. 11; *Gibson v. Reliable Chevrolet, Inc.*, 608 S.W.2d 471, 473-75 (Mo.App. W.D. 1980).[3]

Likewise, the economic loss doctrine encompasses damage to a product's reputation and goodwill. "Consequential economic loss includes loss of profits, loss of good will or business reputation, and other loss proximately resulting from a defective product beyond direct economic loss. 1 James J. White and Robert R. Summers, Uniform Commercial Code § 11-6 at 751 (5th ed. 1996).

## Conclusion

Because Plaintiffs' damages are solely economic, they cannot avoid application of the economic loss doctrine. Plaintiffs are therefore limited to their warranty claims, and Count III must be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant ICL Performance Products, LP's Motion to Dismiss Count III of Plaintiffs' Amended Petition, [Doc. No. 21], is **GRANTED**.

Dated this 31st day of March, 2008.

---

[3] Plaintiffs' reliance on *Oldham's Farm Sausage Co. V. Salco, Inc.*, 633 S.W.2d 177 (Mo.App. W.D. 1982) is misplaced. Clearly, the pork sausage that was ruined because of defective chilling machine is "other property." Furthermore, as ICL observes, *Oldham's Farm* did not address the economic loss doctrine, rather, the suit was based on breach of warranties and strict liability.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE